UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

SOPHIA ALEXIS KING,                          Case No.: 1:23cv20113

    Plaintiff,
v.

MIAMI-DADE COUNTY, and
MIAMI-DADE POLICE DEPARTMENT, and
JEAN C. PINERO, individually, and in
his official capacity as a Miami-Dade
Police Department police officer, and others,

    Defendants.
_____/

## COMPLAINT

Plaintiff, SOPHIA ALEXIS KING, hereinafter, ("Ms. King") sues Defendants MIAMI-DADE COUNTY (the "County"), MIAMI-DADE POLICE DEPARTMENT ("MDPD"), JEAN C. PINERO ("Officer Pinero"), individually, and in his official capacity as Police Officer in and for the Miami-Dade Police Department ("MDPD"), and others, and in support thereof, states the following:

## INTRODUCTION

1) This is a civil rights action on behalf of Ms. King whose rights under the Fourth Amendment to the United States Constitution were violated when she was unlawfully detained by Officer Pinero, without cause, resulting in her arrest.

2) Ms. King seeks redress for the violations of her rights, privileges, and immunities as guaranteed her by the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C § 1983, and the laws of the State of Florida.

## JURISDICTION AND VENUE

3) Jurisdiction of this Court arises under 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and

28 U.S.C. § 1343(a)(4).

4) Supplemental jurisdiction over Plaintiff's additional state law claims is proper pursuant to 28 U.S.C. §1367(a) because they form part of the same case or controversy.

5) Venue is properly brought in the Southern District of Florida under 28 U.S.C. §1391(b) because it is the district in which Ms. King resides, and in which all of the events establishing the Plaintiff's claims occurred.

6) All conditions precedent to the maintenance of this action have been performed or have occurred, including pursuant to Fla. Stat. § 768.28.

## PARTIES

7) Ms. King is a 32-year-old resident of Miami-Dade County, Florida, and is otherwise *sui juris*.

8) Defendant, Officer Jean C. Pinero, is a resident of the State of Florida, a citizen of the United States, over 18 years of age, and otherwise *sui juris*. Officer Pinero is sued in his official capacity as a Police Officer for the MDPD, and in his individual capacity. As a Miami-Dade police officer, Officer Pinero is duly authorized to perform and execute the law enforcement functions conferred upon him by and through the MDPD, a department or agency which is responsible for providing law enforcement services within Miami-Dade County, Florida.

9) Defendant, Miami-Dade County, is duly incorporated and existing under the laws of the State of Florida. The County established and maintains the Miami-Dade Police Department ("MDPD"), as a constituent department or agency. The County is responsible, through its officers, employees, servants, and agents, for enforcing the regulations of the County and for ensuring that its officers, employees, servants, and agents obey the laws of the State of Florida and the United States.

10) Defendant, MDPD, is responsible, through its officers, employees, servants, and

agents, for enforcing the regulations of Miami-Dade County and the laws of the State of Florida, and for ensuring that its officers, employees, servants, and agents obey the laws of the State of Florida and the United States.

11) At all times material, Defendant Officer Pinero was and/or is employed as a police officer of the MDPD.

12) At all times material hereto, MDPD Officer Pinero is being sued in his individual capacity.

13) At all times material hereto, Officer Pinero was an employee and sworn law enforcement officer, and was acting as an agent and employee of the MDPD and acting under the color of state law.

14) As set forth in more detail below, Officer Pinero, while acting within the course and scope of his employment with the MDPD and under color of law, directly violated both the constitutional rights of Ms. King as well as the statutory and common law duties owed to Ms. King.

## ALLEGATIONS OF MS. KING

15) On May 17, 2019, at approximately 6:00 a.m., Ms. King received a phone call from a police officer (upon information and belief, Officer Pinero (Badge No: 7308)) who stated Ms. King was a witness to a crime in Liberty City and that they had some questions for her.

16) Knowing she was not frequently in Liberty City, especially in the recent past, Ms. King hung up and called the police department to confirm that this was in fact an officer of the law. The officer stated that she should cooperate if she does not want to be picked up on the weekend. The officer stated that they have Ms. King on video as a witness to a crime, and that if she did not come into the office, they would arrest her and take her kids away.

17) Ms. King stated she would meet the officer at the Miami Gardens Police Department,

and she would have her two-year-old child in the car with her. Ms. King picked up her grandmother along the way.

18) According to officer-worn body camera footage recorded that morning, at two times within a period of approximately one hour, a team of as many as six police officers for the MDPD attempted contact with Ms. King at two separate residences. At the first apartment complex residence, the current resident answering the door identified himself as "Victor [inaudible]," and he indicated that he did not know anyone by the name "Sophia King," but stated that he has "seen that name in the mail." No one appears to answer the door at the second location, a single-family type dwelling.

19) While *en route* to the police station, at approximately 11:00 a.m. EST, Ms. King's vehicle was surrounded by at least six police officers and child services. With their hands on their guns, the officers pulled Ms. King out of her personal vehicle, handcuffed her, and patted her down.

20) The following events related to her arrest are captured on the body camera audio and video footage worn by at least two officers, one worn by Officer Pinero and another by an officer holding her *hands cuffed and behind her back*:

    a) *Videos begin, and audio lags.*

    b) Ms. King: "…Can I call my school and let them know I'm not coming?..."

    c) Officer Pinero: "You'll get to call anybody. I'll make sure…"

    d) Ms. King: "I don't have their number…"

    e) Officer Pinero: "OK…"

    f) Ms. King: "I'm supposed to start mortgage broker school…"

    g) Officer Pinero: "I'm gonna explain…"

    h) Ms. King: "I can't have this stuff on my record."

    i) Officer Pinero: "Can I explain to you what, we…You don't even know what this

is pertain…"

j) Ms. King: "I *don't* know."

k) Officer Pinero: "So let me tell you. So…"

l) Ms. King: "I just went through something. Like, I just went through domestic violence with my husband."

m) *Ms. King is relocated to a sidewalk, still cuffed. Officer Pinero gets into his patrol vehicle to move it to the side of the road, parks, exits, and returns to Ms. King.*

n) Ms. King: "Can I give her (Ms. King's grandmother) the number to my school so she could let them know…"

o) Officer Pinero: "I'll give you all the information…"

p) Ms. King: "I'm supposed to be there at 1 o'clock. Ya'll could of [did] this… I could've [came] next week."

q) Officer Pinero: "Like I said, it was on your terms. But let's, let, let me explain to you what's going on…"

r) Ms. King: "I'm just trying to cooperate…"

s) Officer Pinero: "…so that you don't have any issues later on. OK, so the robbery detective…"

t) Ms. King: "If I was guilty, I wouldn't of [came]."

u) Officer Pinero: "Can I explain to you, please, so…"

v) Ms. King: "Yes, go ahead."

w) Officer Pinero: "So, you don't remember an incident that had to do with some keys and your car, or somebody's car, and then somebody got hit over the head?"

x) Ms. King: "What the hell? I promise to God I don't know what you're talkin'

      about."

y) Officer Pinero: "OK, well that…"

z) Ms. King: "My car?"

aa) Officer Pinero: "No, I don't know…

bb) Ms. King: "There's no keys, never been anybody in my car…

cc) Officer Pinero: "Well, I'll have the detective come talk to you. You want to talk to the detective, right."

dd) Ms. King: "Yes…"

ee) Officer Pinero: "OK..."

ff) Ms. King: "…I don't know what's goin' on…"

gg) Officer Pinero: "…I'll let him know."

hh) Ms. King: "…I would've never [came] here if I knew something happened."

ii) Officer Pinero: "Yea, but, then you're gonna have it on your…"

jj) Ms. King: "You said I'm a witness, uh…"

kk) Officer Pinero: "…you're gonna have it on the, on your, on your thing. Let me call the detective."

21) Yet, the content of Officer Pinero's supposed call to the detective is neither audible from the first officer's footage, nor was it captured by Officer Pinero's own body camera footage because both officers' video segments terminate, as produced in response to Plaintiff's public records request.

22) Separately located on scene, and after Ms. King was arrested, Officer Pinero proceeded to interview Ms. King's grandmother, relaying facts to her as if to jog her memory, such as, "[audio not initially captured]…that occurred, I guess, involving her and the car, and there [was]

some keys that were snatched, and then the guy that they took the keys from, he was hit by a family member of her, and they split the guy's head open?"

23) Visibly dumbfounded, Ms. King's grandmother is asked if she knows about that, to which she replies, "No… That's not her."

24) As seen from Officer Pinero's body camera footage, and while Ms. King is still handcuffed, Officer Pinero is clearly seen holding Ms. King's driver's license in his hand– which documented her full name, SOPHIA ALEXIS KING, driver's license number, date of birth, physical demographic identifiers, and home address.

25) He said, "I have her ID…We just pick people up, that's all we do."

26) After being put in the back of a car, and after several minutes passed, the officers stated the crime she was being arrested for happened three months ago and she was suspected of hitting someone on the head and stealing their keys.

27) Ms. King was then transported to jail for booking.

28) During transport, the police vehicles suddenly stopped, and Officer Pinero—who had been in the lead car—asked Ms. King for her middle initial. She responded, "A." The officer then asked what her birthday was, and Ms. King responded, "September 8, 1990." At that point, the officers pulled into the "Citgo" located in N.W. 169th Terrace and 27th Avenue.

29) The officers seemingly realized that they had arrested the wrong person. She was uncuffed, and they began apologizing.

30) Sergeant Baskins (Badge Number: 7909) also came to the scene to apologize.

31) After being let out of the car, approximately 30 minutes after being placed into handcuffs, Ms. King said to one officer that they "should have known who they were arresting first, they could have pulled up the database, pulled up pictures, I'm pretty sure [you] all did what you had

to do to see who I was before I got here. I know you all did all of that." To which the officer responded, "We did."

32) Ms. King showed the officer that she was visibly shaking, and she stated that she was likely going to have a seizure from the stress induced as a direct result of the entire ordeal. Once back in her own vehicle, and as seen from body cam footage, Ms. King began violently and uncontrollably shaking as a result of the anxiety.

33) The officers then called Fire Rescue who treated her on scene.

### COUNT I
### *Unlawful Arrest*
### *42 U.S.C. §1983 and the Fourth Amendment*
**(Ms. King against the County, MDPD and Officer Pinero)**

34) Ms. King incorporates paragraphs 1-33 as though fully set forth herein.

35) At all times material, Ms. King had a constitutionally protected right to be free from unreasonable searches and seizures and from being subjected to a seizure or arrest without probable cause, and she maintained the right to be free from unlawful detention, rights protected under the Fourth and Fourteenth Amendments of the United States Constitution.

36) Ms. King, as a matter of fact, had entirely no involvement with any illegal activity, nor was she a witness to any alleged illegal conduct related to the subject or circumstances of the particular investigation at issue.

37) At no time did Officer Pinero have the requisite probable cause which would support her seizure or arrest, nor did he endeavor to substantiate the same independently or with the "Detective" leading the investigation beforehand.

38) As such, her constitutional rights remained intact and her person to be free and protected against any unlawful seizure or arrest.

39) On May 17, 2019, Officer Pinero approached Ms. King's vehicle and she was placed into handcuffs. He caused Ms. King to be detained, searched, and arrested, all in violation of clearly established law.

40) By the officers' own admissions, they had arrested the wrong person. For Officer Pinero and other law enforcement personnel on scene to arrive at that conclusion required no further level of confirmation as to her identity antecedent to her arrest, which evidently seems to be when they claim to have realized their error. It merely points to the fact that the correct information existed at the time of her arrest, demonstrated by their actions of her release. And the correct information did not implicate Ms. King before, during, or after her arrest.

41) According to those admissions on camera, particularly outlined in paragraph 31, officers had already supposedly ascertained the correct person they sought before ever coming into contact with Ms. King. A reasonably competent officer in these circumstances would or should have exercised the level of due care to effectuate a seizure of any individual, especially when the identity of the correct individual was ascertained before arresting, vice she whom would erroneously become Ms. King.

42) Further, it is evident from the body camera footage produced to date that a phone call was made by Officer Pinero to a "Detective" during Ms. King's encounter, and sometime after she was arrested the fact was confirmed that Ms. King was not *that* person.

43) At all times material, any reasonably competent officer having a reasonable degree of training and expertise should or would have known that there was no constitutional or legally justifiable basis to seize Ms. King under these circumstances.

44) It is reasonable to conclude that the correct information identifying the actual alleged assailant or witness was readily available prior to any law enforcement interaction with Ms. King,

facts known arguably even at the time the 6:00 a.m. phone call was placed to Ms. King, whereby she was pressured to come to the station.

45) On May 17, 2019, Officer Pinero, acting under color of law, caused Ms. King to be seized and detained, depriving her of protected liberties, against her will and without legal authority to do so, and despite her desire to leave with pleas that they had arrested the wrong person.

46) On May 17, 2019, Officer Pinero, acting in the course and scope of his employment as a police officer for MDPD, willfully, knowingly, and purposely seized, detained, and arrested Ms. King.

47) Officer Pinero neither had an arrest warrant for Ms. King, nor the requisite probable cause to substantiate obtaining one. Nor did he have the same for making a warrantless arrest.

48) At all times material hereto, it was a clearly established violation of Ms. King's constitutional right to be free from unreasonable searches and seizures when no probable cause of any criminal activity existed to seize, search, detain, or arrest her.

49) The County and MDPD are responsible for the false arrest of Ms. King in that the false arrest was intentional and was committed within the course and scope of the MDPD arresting officers' employment with MDPD, such that the doctrine of respondeat superior applies to this action. "Under Florida law, an employee acts within the scope of his employment 'if his act is of the kind he is employed to perform, it occurs substantially within the time and space limits of employment and it is activated at least in part by a purpose to serve the master. *Lozada v. Hobby Lobby Stores, Inc.*, 702 Fed. Appx. 904, 909 (11th Cir. 2017) (internal citations omitted).

50) As a direct and proximate result of the unlawful seizure and arrest, Ms. King has suffered a panic attack and seizure, pain and suffering, and mental anguish. The impact of these events is lasting for Ms. King.

**WHEREFORE**, Plaintiff SOPHIA ALEXIS KING, seeks entry of final judgment against Defendants MIAMI-DADE COUNTY, MIAMI-DADE POLICE DEPARTMENT, JEAN C. PINERO, individually, and in his official capacity, and others for compensatory and punitive damages, as well as costs, attorney fees, and such other relief that the Court deems just and proper.

## COUNT II
### *False Imprisonment*
**(Ms. King against the County, MDPD and Officer Pinero)**

51) Ms. King incorporates paragraphs 1-33 as though fully set forth herein.

52) This is an action, under the common law of the State of Florida, for false imprisonment. Such claims arise from a common nucleus of operative facts as the violations of 42 U.S.C. § 1983, as set forth above.

53) On May 17, 2019, Officer Pinero, acting under the color of the law and in the course and scope of his employment as a police officer for MDPD, caused Ms. King to be seized, detained, and arrested with the intent to confine her, and her confinement continued for the duration of her transport to the station.

54) As a result, Ms. King was confined and was deprived of her constitutional liberties for an extended period of time, held against her will and without legal authority to do so, and despite her expressed desire to leave.

55) At no time did Officer Pinero have any probable cause which would support a constitutional seizure or arrest of Ms. King.

56) On May 17, 2019, notwithstanding having the requisite probable cause, Officer Pinero approached Ms. King's vehicle and caused her to be detained and searched, all in violation of clearly established law.

57) Ms. King was aware of her confinement by her outwardly expressed desire to leave

with pleas that they had arrested the wrong person.

58) Officer Pinero acted with malice, bad faith or wanton or willful disregard for the safety of Ms. King's well-being.

59) The County and MDPD are responsible for the false imprisonment of Ms. King in that the false arrest and continued imprisonment was intentional and was committed within the course and scope of the MDPD arresting officers' employment with MDPD, such that the doctrine of respondeat superior applies to this action. "Under Florida law, an employee acts within the scope of his employment 'if his act is of the kind he is employed to perform, it occurs substantially within the time and space limits of employment and it is activated at least in part by a purpose to serve the master. *Lozada v. Hobby Lobby Stores, Inc.*, 702 Fed. Appx. 904, 909 (11th Cir. 2017) (internal citations omitted).

60) As a direct and proximate result of the false imprisonment, Ms. King has suffered a panic attack and seizure, pain and suffering, and mental anguish. The impact of these events is lasting for Ms. King.

**WHEREFORE**, Plaintiff SOPHIA ALEXIS KING, seeks entry of final judgment against Defendant JEAN C. PINERO for compensatory and punitive damages, as well as costs, attorney fees, and such other relief that the Court deems just and proper.

### COUNT III
### *Assault and Battery*
### (Ms. King against all Defendants)

61) Ms. King incorporates paragraphs 1-33 as though fully set forth herein.

62) This is an action, under the common law of the State of Florida, for assault and battery. Such claims arise from a common nucleus of operative facts as the violations of 42 U.S.C. § 1983, as set forth above.

63) On May 17, 2019, Officer Pinero, and others, acting in the course and scope of his employment as a police officer for the County and MDPD, caused Ms. King to be seized, handcuffed, and placed into a patrol vehicle. Officer Pinero's actions were intentional and intended to cause a harmful or offensive contact with the person of Ms. King.

64) Officer Pinero acted with malice, bad faith or wanton or willful disregard for the safety of Ms. King's well-being.

65) Defendants, MIAMI-DADE COUNTY and MIAMI-DADE POLICE EPARTMENT, are responsible for the assault and battery alleged above committed by Officer Pinero upon the person of Ms. King, in that the civil assault and battery was intentional and was committed within the course and scope of Officer Pinero's employment with the MDPD, such that the doctrine of respondeat superior applies to this action.

66) As a direct and proximate result of the false imprisonment, Ms. King has suffered a panic attack and seizure, pain and suffering, and mental anguish. The impact of these events is lasting for Ms. King.

**WHEREFORE**, Plaintiff SOPHIA ALEXIS KING, seeks entry of final judgment against Defendant JEAN C. PINERO for compensatory and punitive damages, as well as costs, attorney fees, and such other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, SOPHIA ALEXIS KING, demands a trial by jury of all issues so triable.

Respectfully Submitted,

*/s/ David Andrew*
David Andrew, Esq
Florida Bar No.: 90864
**MAC Legal, P.A.**
4601 Sheridan Street, Suite 205

Hollywood, FL 33021
(954) 395-2954
d.andrew@maclegalpa.com

*Counsel for Plaintiff*