UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-20113-CIV-ALTONAGA

**SOPHIA ALEXIS KING**,

    Plaintiff,
v.

**MIAMI-DADE COUNTY**, *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants, Miami Dade County and Jean Pinero's Motion for Summary Judgment [ECF No. 70], filed on January 12, 2024. Plaintiff, Sophia Alexis King, filed a Response [ECF No. 83]; to which Defendants filed a Reply [ECF No. 93]. The Court has considered the record, the parties' written submissions,[1] and applicable law. For the following reasons, the Motion is granted.

## I. BACKGROUND

On February 17, 2019, a man was robbed near Miami Gardens, Florida. (*See* SOF ¶¶ 3–4; Resp. SOF ¶¶ 3–4). Miami-Dade Police Department Detective Rick Hernandez responded to the scene of the robbery and learned the robbery stemmed from a car sale gone wrong. (*See* SOF ¶¶ 3–17; Resp. SOF ¶¶ 3–17). Hernandez also learned that one of the perpetrators, a "Sophia M. King" ("the Suspect"),[2] allegedly bit the victim during the robbery. (*See* SOF ¶¶ 14–15; Resp.

---

[1] The parties' factual submissions include Defendants' Statement of Material Facts [ECF No. 68] ("SOF"); Plaintiff's Response to the SOF and Additional Facts in Opposition to Defendants' Motion for Summary Judgment [ECF No. 82] ("Resp. SOF"); and Defendants' Reply Statement of Material Facts [ECF No. 93] ("Reply SOF").

[2] Hernandez used information from the victim to locate the Suspect's driver's license photo, which he then used to confirm her identity with the victim and a witness. (*See* SOF ¶¶ 19–22; Resp. SOF ¶¶ 19–22).

SOF ¶¶ 14–15). Hernandez prepared a "Person Alert Message" memorandum detailing his determination that probable cause existed to arrest the Suspect for strong arm robbery; the message included her middle initial, stated she was a Black woman with a date of birth of February 24, 1971, and her last known address was in Miami Gardens. (*See* Resp. SOF ¶ 106; Reply SOF ¶ 106).

Over the course of his investigation, Hernandez identified four addresses where the Suspect potentially resided. (*See* SOF ¶¶ 25, 28; Resp. ¶¶ 25, 28). After officers came up empty at the first two addresses, Hernandez contacted Defendant, Detective Pinero, and asked him to attempt to find and arrest the Suspect at one of the remaining addresses. (*See* SOF ¶¶ 27, 29; Resp. SOF ¶¶ 27, 29). Hernandez sent Pinero a message with the Suspect's name (including middle initial), date of birth, two recent addresses, and driver's license photo; he also told Pinero that the robbery occurred near Miami Gardens. (*See* SOF ¶¶ 31, 34; Resp. SOF ¶¶ 31, 34). Pinero looked at the driver's license photo once. (*See* SOF ¶¶ 32–33; Resp. SOF ¶¶ 32–33). A different officer ran searches on various databases to help locate the Suspect. (*See* SOF ¶¶ 35–36; Resp. SOF ¶¶ 35–36).

On the morning of May 17, 2019, Pinero and his squad set out to locate the Suspect. (*See* SOF ¶ 37; Resp. SOF ¶ 37). She was not at either of the addresses they visited. (*See* SOF ¶¶ 39–43; Resp. SOF ¶¶ 39–43). After further investigation, an officer eventually found a phone number associated with "Sophia King." (*See* SOF ¶¶ 45–46; Resp. SOF ¶¶ 45–46). The officer could not recall whether he included the Suspect's middle initial when he ran the search that produced the phone number. (*See* Resp. SOF ¶ 111; Reply SOF ¶ 111).

Pinero called the number, which belonged to Plaintiff, Sophia *Alexis* King. (*See* SOF ¶¶ 49–50; Resp. SOF ¶¶ 49–50). Plaintiff answered and confirmed her name was Sophia King, at

2

which point Pinero told her he needed to speak with her because she had witnessed a crime. (*See* SOF ¶¶ 51–52; Resp. SOF ¶¶ 51–52).[3] Plaintiff offered to meet Pinero at the Miami Gardens Police Department. (*See* SOF ¶¶ 55–58; Resp. SOF ¶¶ 55–58). Pinero thought this was significant because the robbery occurred in Miami Gardens, and the addresses he had visited that morning were in Miami Gardens. (*See* SOF ¶ 58; Resp. SOF ¶ 58). Plaintiff says she told Pinero in that phone conversation that he had the wrong person, but Pinero says he believed he had spoken to the Suspect. (*See* SOF ¶¶ 59–60; Resp. SOF ¶¶ 59–60).

The police squad went to the Miami Gardens Police Department and awaited Plaintiff's arrival. (*See* SOF ¶ 61; Resp. SOF ¶ 61). When a red SUV pulled into the parking lot, an officer ran the license plate and told the squad via radio that the SUV was registered to Alexis King. (*See* SOF ¶¶ 62–63; Resp. SOF ¶¶ 62–63). The officers boxed in the vehicle, and Pinero approached the driver's side door, where he observed that the driver was a Black woman. (*See* SOF ¶¶ 64–66; Resp. SOF ¶¶ 64–66). Two minutes after her arrival, Plaintiff got out of the vehicle, and Pinero placed her in handcuffs. (*See* SOF ¶¶ 62, 68; Resp. SOF ¶¶ 62, 68).

With Plaintiff in handcuffs, Pinero retrieved Plaintiff's license and "glanced briefly" at it. (SOF ¶¶ 79, 82; *see also* Resp. SOF ¶¶ 79, 82). Plaintiff's grandmother was in the car; when Pinero described the robbery to her, she informed Pinero that Plaintiff was not the person he was describing — but Pinero continued to believe Plaintiff was the Suspect. (*See* SOF ¶¶ 83–84; Resp. SOF ¶¶ 83–84).

Pinero placed Plaintiff in the backseat of another officer's car; that officer followed Pinero's car to meet Detective Hernandez. (*See* SOF ¶¶ 85, 87; Resp. SOF ¶¶ 85, 87). On the drive, Pinero read over Plaintiff's driver's license in more detail and noticed her middle name was

---

[3] "Telling a suspect that she is a witness rather than a suspect reduces the risk that she will realize she is wanted for a crime." (SOF ¶ 53 (citation omitted); *see also* Resp. SOF ¶ 53).

Alexis. (*See* SOF ¶¶ 88–90; Resp. SOF ¶¶ 88–90). Pinero called Hernandez, who again provided Pinero the Suspect's biographical information. (*See* SOF ¶¶ 91–93; Resp. SOF ¶¶ 91–93). Pinero radioed the officer driving Plaintiff and told her to pull over at a nearby gas station. (*See* SOF ¶ 93; Resp. SOF ¶ 93).

At the gas station, Pinero asked Plaintiff her middle name and date of birth. (*See* SOF ¶¶ 95–96; Resp. SOF ¶¶ 95–96). Plaintiff told him her middle name was Alexis, and her date of birth was September 8, 1990. (*See* SOF ¶¶ 97–98; Resp. SOF ¶¶ 97–98). This matched Plaintiff's license, but not the Suspect's description. (*See* SOF ¶ 98; Resp. SOF ¶ 98). Pinero removed the handcuffs from Plaintiff, approximately 20 minutes after he had placed them on her. (*See* SOF ¶¶ 99–100; Resp. SOF ¶¶ 99–100 (disputing that Plaintiff was "arrested, not detained" but not disputing that she was handcuffed for approximately 20 minutes)).

As a result of these events, Plaintiff brings a false arrest claim under 42 U.S.C. section 1983 against Pinero alone (*see* Am. Compl. [ECF No. 26] ¶¶ 42–48), as well as false arrest claims under state law against both Pinero and Defendant Miami-Dade County (*see id.* ¶¶ 36–41; 49–54). Defendants move for final summary judgment on all claims. (*See generally* Mot.).

## II. LEGAL STANDARDS

***Summary Judgment***. Summary judgment may be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), (c). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court draws

4

all reasonable inferences in favor of the party opposing summary judgment. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000).

If the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by: (1) establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim and (2) showing the Court there is insufficient evidence to support the non-moving party's case. *See Blackhawk Yachting, LLC v. Tognum Am., Inc.*, No. 12-Civ-14209, 2015 WL 11176299, at *2 (S.D. Fla. June 30, 2015). "Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must cite to . . . materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute." *Id*. (alteration added; quotation marks omitted; citing Fed. R. Civ. P. 56(c)(1)).

*Qualified Immunity*. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (alteration added) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It "balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To be entitled to qualified immunity's protections, a government official must demonstrate that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (quotation marks and citations omitted). When a defendant acts within the scope of his discretionary authority, the burden "shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*,

5

284 F.3d 1188, 1194 (11th Cir. 2002) (citation omitted), *abrogated in part on other grounds by Pearson*, 555 U.S. 223; *see also Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019). A plaintiff can show qualified immunity is not appropriate by establishing that (1) the defendant's conduct violated her constitutional rights; and (2) the constitutional violation was clearly established at the time. *See Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (quotation marks and citations omitted). These two requirements may be addressed in any order. *See id.* (citing *Pearson*, 555 U.S. at 236).

The plaintiff "bear[s] the burden of showing that the federal rights allegedly violated were clearly established." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996) (alteration added; citation omitted). To satisfy the "clearly established" requirement, a law may not be "defined 'at a high level of generality[,]'" and the "clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (alteration added; citations omitted). There are three ways a plaintiff may show a right is clearly established:

> (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Perez v. Suszczynski*, 809 F.3d 1213, 1222 (11th Cir. 2016) (quotation marks and citation omitted).[4] Even if the plaintiff demonstrates that, at a general level, a clearly established right may be at stake, the necessary particularization requires the Court to examine "whether the defendant's conduct was nonetheless objectively reasonable in light of that [clearly established] right." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1283 (11th Cir. 2008) (alteration added; citation omitted).

---

[4] In the Eleventh Circuit, if caselaw is used, only decisions of the Supreme Court, Eleventh Circuit, and the pertinent state's highest court — here, the Florida Supreme Court — can clearly establish the law for qualified immunity purposes. *See McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007) (citation omitted).

## III. DISCUSSION

Defendants argue that summary judgment should be entered because Defendants are immune from Plaintiff's claims. (*See* Mot. 5). Plaintiff insists there are material facts inconsistent with the grant of immunity defenses at the summary judgment stage. (*See* Resp. 4).

Defendants have the better argument. Pinero is entitled to qualified immunity from Plaintiff's federal claim; Miami-Dade County is entitled to sovereign immunity from Plaintiff's state law claim; and Pinero is immune from Plaintiff's state law claim because of state-agent immunity. The Court explains.

### A. Qualified Immunity

To invoke qualified immunity, Pinero must show that he was acting within his discretionary authority; in other words, his actions must have been "undertaken pursuant to the performance of his duties, and . . . within the scope of his authority." *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019) (alteration added; citation and quotation marks omitted). Pinero "readily satisfie[s] this requirement, as [he] undertook all the challenged actions while on duty as [a] police officer[] conducting arrest and investigative functions." *Id.* (alterations added).

Because Pinero was acting within the scope of his discretionary authority, the burden shifts to Plaintiff to demonstrate that (1) Pinero violated a constitutional right and (2) if he did, "the illegality of his conduct was clearly established[.]" *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1200 (11th Cir. 2007) (alteration added). Plaintiff argues that Pinero violated her Fourth Amendment right to be free from arrest absent probable cause by making an unreasonable mistake of identity. (*See* Resp. 4). She also argues that this right was clearly established at the time of her arrest. (*See id.* 16). The Court addresses each argument in turn.

7

***Constitutional Right***. "A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim." *Rodriguez v. Farrell*, 280 F.3d 1341, 1345 (11th Cir. 2002) (citation and quotation marks omitted). But "when the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." *Hill v. California*, 401 U.S. 797, 802 (1971) (alteration adopted; citation and quotation marks omitted). Plaintiff does not dispute that Pinero, via his fellow officers, had probable cause to arrest the Suspect. (*See* Resp. 5–6, 8; SOF ¶ 2; Resp. SOF ¶ 2). The operative question is whether King can show a genuine issue of material fact as to the reasonableness of Pinero's mistake. *See Hill*, 401 U.S. at 802–04.

The reasonableness of Pinero's mistake is determined in light of "the totality of the circumstances surrounding the arrest[.]" *Rodriguez*, 280 F.3d at 1347 (alteration added; citations omitted). The Court looks at "whether a reasonable officer, knowing what [Pinero] knew at the time, objectively could have believed" that the person he was arresting was the Suspect. *Brown v. City of Huntsville*, 608 F.3d 724, 736 (11th Cir. 2010) (alteration added); *see also Graham v. Connor*, 490 U.S. 386, 396 (1989) (noting that reasonableness under the Fourth Amendment "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight").

For example, in *Rodriguez*, Joe John Rodriguez was arrested following a traffic stop because a warrant existed for a man who used the alias, Joe Rodriguez. *See* 280 F.3d at 1343–45. The Eleventh Circuit determined the officer's mistake was reasonable because the two men shared, among other things, the same name, sex, age, and race. *See id.* at 1347. The two men's height differed by five inches — the warrant was for a 5'6" tall man while Rodriguez was 5'11" — but

the court concluded that a "reasonable" but mistaken estimate of height did not make a constitutional violation, "given all the circumstances." *Id.* at 1347–48.

Based on the undisputed facts here, at the time of Plaintiff's arrest,[5] a reasonable officer would have known: probable cause existed to arrest a Black woman named Sophia King for a robbery that took place near Miami Gardens (*see* SOF ¶¶ 2–3, 23, 29; Resp. SOF ¶¶ 2–3, 23, 29); Sophia King's last known addresses were in Miami Gardens (*see* SOF ¶¶ 39, 42; Resp. SOF ¶¶ 39, 42); an officer called a phone number registered to Sophia King and a woman answered confirming her name was Sophia King (*see* SOF ¶¶ 46, 49–51; Resp. SOF ¶¶ 46, 49–51); that woman offered to meet the officers at the Miami Gardens Police Department (*see* SOF ¶¶ 54–56, 58; Resp. SOF ¶¶ 54–56, 58); and a Black woman driving a car registered to Sophia King arrived at the meeting location (*see* SOF ¶¶ 62–66; Resp. SOF ¶¶ 62–66).

True, the two women had different middle initials and ages. (*See* SOF ¶¶ 2, 50, 97; Resp. SOF ¶¶ 2, 50, 105). But "given all the circumstances" — including the women's shared first and last names, sex, race, and general location — Pinero's reasonable mistakes do not amount to a constitutional violation. *Rodriguez*, 280 F.3d at 1348. Even reading the facts in the light most favorable to Plaintiff, the Court concludes, as a matter of law, that Pinero made a reasonable mistake when he arrested Plaintiff "and, thus, committed no constitutional violation upon which

---

[5] Contrary to Plaintiff's assertions (*see* Resp. 10 (describing Pinero looking at Plaintiff's license after Plaintiff was already handcuffed but "before arresting her")), the key moment for purposes of a Fourth Amendment analysis is the moment Plaintiff was seized, not formally arrested. *See, e.g.*, *Brendlin v. California*, 551 U.S. 249, 259–62 (2007) (rejecting that a Fourth Amendment seizure began at formal arrest). Plaintiff was seized, arguably, when the officers surrounded her car, and certainly by the time she was handcuffed. *See Florida v. Bostick*, 501 U.S. 429, 437 (1991) ("[T]he crucial test [for determining whether a person is seized] is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." (alterations added; citation and quotation marks omitted)).

to base a section 1983 constitutional false-arrest claim." *Id.* at 1349 (footnote call number omitted).

This is true even if, as Plaintiff argues, Pinero could have investigated her identity further before her arrest. "[T]he ultimate touchstone of the Fourth Amendment is reasonableness." *Riley v. California*, 573 U.S. 373, 381 (2014) (alteration added; citation and quotation marks omitted). "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials[.]" *Heien v. North Carolina*, 574 U.S. 54, 60–61 (2014) (alteration added). The Court's "task is not to evaluate what the officers could or should have done in hindsight." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1167 (11th Cir. 2009) (per curiam). Instead, the Court's focus must be on what Pinero knew at the time of Plaintiff's arrest, and the reasonableness of his actions based on *that* knowledge. *See Graham*, 490 U.S. at 396. Based on the knowledge Pinero had at the time, his mistake was reasonable.[6]

Further, even if the Court were to look at what Pinero should have done, "[t]here are limits on how much independent investigating an officer must make before executing an arrest warrant, even when the arrested person is asserting a claim of mistaken identity." *Rodriguez*, 280 F.3d at 1347 n.15 (alteration added; citation omitted). "The question is not whether the police could have done more; but whether they did just enough." *Id.*

Here, even if Pinero could have, in theory, done more (*i.e.*, by investigating the differences in age and middle initial before seizing Plaintiff),[7] for the reasons stated, Pinero did at least just

---

[6] This is also true even though Plaintiff and her grandmother protested that the officers had the wrong person. (*See* Resp. SOF ¶¶ 114, 123, 125; SOF ¶ 83). "As the Supreme Court has expressly recognized, police are right to be wary when suspects claim mistaken identity." *Rivera v. Cnty. of Los Angeles*, 745 F.3d 384, 389 (9th Cir. 2014) (citing *Hill*, 401 U.S. at 803).

[7] Plaintiff also argues that Pinero should have investigated the fact that her SUV was registered to Sophia Alexis King, who was born in 1990. (*See* Resp. 6–8). This boils down to the same argument that Pinero should have investigated the differences in name and age.

enough based on the information he had at the time. Pinero "had sufficient consistent identifying information to reasonably conclude" he was arresting the right person. *Hill v. Scott*, 349 F.3d 1068, 1074 (8th Cir. 2003) (holding that "no reasonable officer would have known" a failure to inquire about birthdate "would violate the Fourth Amendment"); *see also Hunter v. Bryant*, 502 U.S. 224, 228 (1991) ("[T]he court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed . . . after the fact." (alterations added)).

In short, Plaintiff has not shown her constitutional right was violated. The Court turns to the other prong of the qualified immunity analysis.

***Clearly Established***. Even if the Court were to conclude a constitutional right was violated, it would still conclude Plaintiff is not entitled to relief because the right was not clearly established. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citation and quotation marks omitted). Courts look to whether a right is clearly established because "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 12 (citation and quotation marks omitted). When evaluating if a right is clearly established, "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id.* (alteration added; citation and quotation marks omitted; emphasis in original).

According to Plaintiff, Pinero violated her clearly established constitutional right in two ways: (1) Supreme Court and Eleventh Circuit precedent put Pinero on notice that his conduct violated Plaintiff's right and (2) Pinero's actions so obviously violated Plaintiff's constitutional right that no case law is necessary. (*See* Resp. 16–20). The Court addresses each in turn.

11

Plaintiff first attempts to use case law to show her asserted right was clearly established. To do so, Plaintiff must "show that a materially similar case has already been decided" by the Supreme Court, Eleventh Circuit, or Florida Supreme Court. *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017) (citation and quotation marks omitted). Plaintiff states four cases "put Pinero on notice of his obligation to reasonably evaluate and obtain the information available to him and to take steps to eliminate any doubts that would arise from an objective evaluation of that information." (Resp. 17). The Court disagrees.

To begin, Plaintiff cites an unpublished case, *Daniels v. Bango*, 487 F. App'x 532 (11th Cir. 2012). (*See* Resp. 17–18). "[U]npublished cases do not serve as binding precedent and cannot be relied upon to define clearly established law." *Crocker v. Beatty*, 995 F.3d 1232, 1241 n.6 (11th Cir. 2021) (alterations adopted; citation and quotation marks omitted). So, *Daniels* does not help Plaintiff.

Plaintiff's reliance on *Hill v. California* is also perplexing. (*See* Resp. 17). The Supreme Court has "stressed the need to 'identify a case where an officer acting under similar circumstances was held to have *violated* the Fourth Amendment.'" *Dist. of Columbia v. Wesby*, 583 U.S. 48, 64 (2018) (alteration adopted; emphasis added; quoting *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam)). In *Hill*, the Supreme Court held that there was *no* Fourth Amendment violation because "the officers' mistake was understandable[,] and the arrest [was] a reasonable response to the situation facing them at the time." 401 U.S. at 804 (alterations added). *Hill* also does not support Plaintiff's assertion that clearly established law in her favor existed.

Plaintiff next argues that *Tillman v. Coley*, 886 F.2d 317 (11th Cir. 1989), put Pinero on notice that his conduct would violate Plaintiff's constitutional right. (*See* Resp. 17–18). But in *Tillman*, the officer "had at least three months" to investigate and "resolve his doubts" about the

12

identity of the person for whom he sought an arrest warrant. 886 F.2d at 321. Since deciding *Tillman*, the Eleventh Circuit has concluded there is "a fundamental distinction" between that case and cases that "involve[] an on-the-spot decision to arrest by an officer in the field." *Rodriguez*, 280 F.3d at 1350 (alteration added). "*Tillman* deals with the *application* for an arrest warrant that the court concluded was insufficient because the affidavit submitted to the magistrate lacked probable cause; *Tillman* decides nothing about the execution of a valid arrest warrant[.]" *Id.* (alteration added; emphasis in original; citation omitted). Thus, for this case as well, *Tillman* "cannot have clearly established the applicable law for the purposes of the qualified immunity defense." *Id.* (citation omitted).

Plaintiff's last proffered case, *Cozzi v. City of Birmingham*, 892 F.3d 1288 (11th Cir. 2018), also fails to persuade. (*See* Resp. 17, 19). *Cozzi* involved a question about the *existence* of probable cause in the first instance. *See* 892 F.3d at 1294; *see also Garcia v. Casey*, 75 F.4th 1176, 1186 n.1 (11th Cir. 2023) (abrogating *Cozzi* by stating that the Eleventh Circuit erred "in *Cozzi*[] when it applied the outdated probable cause standard" (alteration added)); *Sylvester v. Fulton Cnty. Jail*, --- F.4th ---, No. 22-13258, 2024 WL 1046536, at *6 (11th Cir. Mar. 11, 2024) (recognizing *Cozzi*'s abrogation). It is undisputed here that Defendant had probable cause to arrest the Suspect. (*See* Resp. 5–6, 8; SOF ¶ 2, Resp. SOF ¶ 2). The Court is thus not convinced that Pinero "would know after reading [*Cozzi*] that what he was doing in [the] instant case [] was against the law." *Baxter v. Roberts*, 54 F.4th 1241, 1263 (11th Cir. 2022) (alterations added; citation and footnote call number omitted).

In short, Plaintiff has failed to show there is precedent establishing that Pinero violated the Constitution by mistakenly, but reasonably and otherwise validly, arresting the wrong person.

In the alternative, Plaintiff argues that Pinero's violation of her rights was so obvious that no caselaw is necessary to establish the violation. (*See* Resp. 19). Again, the Court disagrees. "Obvious clarity is a narrow exception . . . , and such cases will be rare[.]" *Wilson v. Sec'y, Dep't of Corr.*, 54 F.4th 652, 663 (11th Cir. 2022) (alterations added; citations and quotation marks omitted). To rely on that "narrow exception," the Court would have to find that Pinero's actions "were so egregious that preexisting, fact-specific precedent was not necessary to give clear warning to every reasonable officer that what the defendant officer was doing must be 'unreasonable' within the meaning of the Fourth Amendment." *Moore v. Pederson*, 806 F.3d 1036, 1049 (11th Cir. 2015) (alteration adopted; citation and quotation marks omitted). Based on the record before it and taking all facts in the light most favorable to Plaintiff, the Court cannot say that that Pinero's mistake was egregious — in fact, the Court has concluded that Pinero's mistake was reasonable within the meaning of the Fourth Amendment.

Thus, Plaintiff's arguments against applying the qualified immunity defense also fail on the clearly established prong, and Pinero is entitled to qualified immunity.

### B. Sovereign Immunity

Plaintiff also brings a false arrest claim against Miami-Dade County. (*See* Am. Compl. ¶¶ 36–41). She concedes that if the Court grants summary judgment to Pinero, it "would be proper" for the Court to similarly grant summary judgment to the County. (Resp. 20).

Putting aside Plaintiff's concession, summary judgment is appropriate. "Municipalities and their officers are entitled to immunity from tort liability except where that immunity is explicitly waived." *Land v. Sheriff of Jackson Cnty.*, 85 F.4th 1121, 1130 (11th Cir. 2023) (citing Fla. Stat. § 768.28(1); Fla. Const. art. X, § 13). "Florida retains immunity from liability arising from 'discretionary' government functions but waives immunity for 'operational' functions." *Id.*

(quoting *Kaisner v. Kolb*, 543 So. 2d 732, 736 (Fla. 1989)). The Florida Supreme Court has held "that the decision of whether to enforce the law by making an arrest is a basic judgmental or discretionary governmental function that is immune from suit, regardless of" who makes the decision. *Everton v. Willard*, 468 So. 2d 936, 937 (Fla. 1985) (alteration added). Because Pinero was performing a discretionary function, the County is entitled to sovereign immunity.

### C. State-Agent Immunity

Finally, Plaintiff brings a false arrest claim under Florida law against Pinero. (*See* Am. Compl. ¶¶ 49–54). "Florida law shields an officer from personal liability for acts within the scope of his employment unless he 'acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.'" *Land*, 85 F.4th at 1130 (quoting Fla. Stat. § 768.28(9)(a)). Defendants argue that the false arrest claim against Pinero is barred by state-agent immunity. (*See* Mot. 17). The Court agrees.

It is undisputed that Pinero "did not act in bad faith" or "with malicious purpose" when arresting Plaintiff. (SOF ¶¶ 102-03; *see generally* Resp. SOF); *see also Porben v. Atain Specialty Ins. Co.*, 546 F. Supp. 3d 1325, 1327 n.3 (S.D. Fla. 2021) (explaining that uncontested material facts are deemed admitted). And Plaintiff raises no genuine issue of material fact that would support a finding that Pinero acted with wanton and willful disregard to her rights. Nothing in the record suggests that Pinero acted "with a conscious and intentional indifference to consequences and with the knowledge that damage is likely to be done to persons or property[,]" or "intentionally, knowingly and purposely." *Peterson v. Pollack*, 290 So. 3d 102, 110 (Fla. 4th DCA 2020) (citations and quotation marks omitted; adopting the definitions for wanton and willful as used in Fla. Stat. § 768.28(9)(a)). Thus, Pinero is entitled to summary judgment on the state law claim as well.

## IV.  CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** Miami-Dade County and Jean Pinero's Motion for Summary Judgment **[ECF No. 70]** is **GRANTED**.  Final judgment will issue by separate order.  All pending motions are denied as moot.

**DONE AND ORDERED** in Miami, Florida, this 23rd day of March, 2024.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:     counsel of record